**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JIMMY LUIS LOPEZ, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1984-B-BH |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed January 13, 2011 (doc. 17), and *Defendant's Motion for Summary Judgment*, filed March 15, 2011 (doc. 20). Based on the relevant filings, evidence, and applicable law, Plaintiff's motion should be **DENIED**, Defendant's motion should be **GRANTED** and the final decision of the Commissioner should be **AFFIRMED**.

**I. BACKGROUND**[1]

**A.   Procedural History**

Jimmy Luis Lopez ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff applied for benefits on December 20, 2000,

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "R."

alleging disability as defined in the Social Security Act. (R. at 89-91.) He qualified for SSI benefits on March 19, 2001, based on a determination of mental retardation under Listing 112.05. (R. at 31.) On September 14, 2007, the Agency determined that he was no longer eligible for SSI benefits because his disability had ceased on September 6, 2007. (R. at 30, 70.) A hearing officer upheld that determination on September 25, 2008. (R. at 58-64.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and personally appeared and testified at a hearing on March 24, 2009. (R. at 49, 278-302.) On August 26, 2009, the ALJ issued a decision finding that Plaintiff's disability had ended on September 6, 2007, and that he had not been disabled since that date. (R. at 17-28.) On August 3, 2010, the Appeals Council denied his request for review and the ALJ's decision became the final decision of the Commissioner. (R. at 4-7.) On October 1, 2010, Plaintiff timely appealed the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on October 17, 1991, was nine years old at time of his initial application for SSI benefits, and was less than eight weeks short of his eighteenth birthday on the date of the ALJ's decision. (R. at 30.) He was repeating tenth grade at the time of the hearing and had no work history. (R. at 284.)

    **2.     Medical Evidence**

An educational diagnostician administered a Wechsler Intelligence Scale for Children, 3rd edition ("WISC-III") test to Plaintiff on January 17, 2001. (R. at 250.) Plaintiff achieved a full scale IQ score of 61, with overall reasoning abilities exceeding those of approximately one percent of children his age. (*Id.*) He received a verbal IQ score of 66 and a performance IQ score of 62, with

both verbal and non-verbal reasoning abilities in the intellectually deficient range, exceeding only one percent of students his age. (*Id.*) The educational diagnostician also administered a Wechsler Individual Achievement test to him. (R. at 251.) He scored a 62 in reading and a 67 in math, falling well below the average range in overall reading and math reasoning skills and exceeding only one percent of students his age in these skills. (R. at 252.) The diagnostician concluded that his cognitive ability and verbal and performance skills were all in the intellectually deficient range. (*Id.*)

An Admission, Review, and Dismissal ("ARD") committee met on March 5, 2001, to discuss his progress. (R. at 248.) He received a full scale IQ score of 61 on the Wechsler test, a score of 61 on the Vineland test, and a score of 67 on both basic reading and math. (*Id.*) The committee noted that he qualified as mentally retarded but found that he could be mainstreamed into general education classes. (R. at 249.) It also noted that his doctor had diagnosed him with attention deficit hyperactivity disorder ("ADHD"), which qualified as an "other health impairment," but had not prescribed any medication for it. (*Id.*)

On April 29, 2004, Plaintiff received a full scale IQ score of 72 on the Universal Nonverbal Intelligence test, falling within the delayed range of cognitive functioning. (R. at 168.) An educational diagnostician administered the Woodcock Johnson test in both English and Spanish to him. (*Id.*) In English, he received a math computation score of 52, a math reasoning score of 69, and a written expression score of 64. (*Id.*) In Spanish, he obtained a math computation score of 52, a math reasoning score of 45, and a written expression score of zero. (R. at 168, 179.) Based on this data, the ARD committee continued to classify him as "learning disabled" in math computation. (R. at 169.)

On August 11, 2007, S.A. Somodevilla, Ph.D., evaluated Plaintiff upon referral from the Department of Disability Services. (R. at 236-38.) On the WISC-III test, he received a verbal IQ score of 80, a performance IQ score of 75, and a full scale IQ score of 76. (R. at 237.) On the WRAT-R(2) test, his reading score of 73 fell at the fourth percentile, his spelling score of 75 fell at the fifth percentile, and his arithmetic score of 63 fell at the first percentile. (*Id.*) Dr. Somodevilla noted that Plaintiff enjoyed playing sports, spending time with friends, could manage his personal needs, was helpful around the house, and was not a management problem. (R. at 236-38.) He had fair judgment and insight, and did not have a significantly impaired memory or a history of delusions or hallucinations. (R. at 238.) Dr. Somodevilla diagnosed him with borderline intellectual functioning and a learning disorder. (*Id.*)

On April 23, 2010, George R. Mount. Ph.D., interviewed and evaluated Plaintiff upon referral from his attorney. (R. at 255-268.) Plaintiff stated during the interview that he could take care of his personal hygiene and perform simple household chores, could not do laundry or shop for groceries, did not have a lot of friends, and needed his mother to remind him to take his medications. (R. at 256.) Dr. Mount observed that Plaintiff had a below average fund of general knowledge and information and had intact remote memory. (*Id.*) He observed, however, that Plaintiff's recent memory was not intact, and he was not capable of managing his funds. (*Id.*)

Dr. Mount also administered the Wechsler Adult Intelligence Scale-III ("WAIS-III") test, the Wide Range Achievement Test-III ("WRAT-III"), and the Vineland Adaptive Behavior Scales, second edition ("Vineland-II") test. (R. at 256-57.) On the WAIS-III test, Plaintiff received a verbal IQ score of 74, a performance IQ score of 67, and a full scale IQ score of 68, at the fourth, first, and second percentiles, respectively. (R. at 256.) Dr. Mount observed that the performance

and full scale IQ scores were in the mild mental retardation range. (R. at 257.) On the WRAT-III, Plaintiff had a reading score of 80, a spelling score of 76, and an arithmetic score of 56, at the ninth, fifth, and 0.4th percentile respectively. (*Id.*) On the Vineland-II test, Plaintiff's general adaptive functioning was moderately impaired with a score higher than only three percent of his peers. (R. at 267.) His adaptive functioning within the communication domain was moderately low with a score higher than or equal to only six percent of his peers. (*Id.*) In the daily living skills domain, he had a low level of adaptive functioning, at the second percentile. (*Id.*) His adaptive functioning within the socialization domain was moderately low for his age group and was at the eighth percentile. (*Id.*)

### 3. Hearing Testimony

On March 24, 2009, Plaintiff and his mother testified at a hearing before the ALJ. (R. at 278-302.) Plaintiff was not represented by an attorney.

#### *a. Plaintiff's Testimony*

Plaintiff testified that he was seventeen years old and in the tenth grade. (R. at 284.) He was taking general classes in Algebra II, English III, health education, math, biology, and U.S. history, and passed all of them except Algebra II. (R. at 285-88.) He was slow compared to other students and sometimes found it hard to understand his teacher. (R. at 284.) He received individual attention during school and tutoring in Algebra II after school. (R. at 286.) He was able to do his homework from time to time. (R. at 288.)

He lived with his mother and seven-year-old sister, with whom he got along well. (R. at 291.) He helped his mother by going to the store or taking out the trash. (R. at 288.) He took care of his own personal grooming and brushed his teeth without needing a reminder. (R. at 289.) If

necessary, he could prepare a meal for himself. (R. at 290.) He played basketball and football, and sometimes, video games. (R. at 289-90.) He used the computer and the internet if he needed to, but he didn't like working with them. (R. at 290.) He did not drive. (R. at 289.) He got frustrated and mad when he found himself unable to get something done, but after taking a break to calm himself down, he tried completing the task again. (R. at 290.) He was not taking any medications. (*Id.*)

### *b. Mother's Testimony*

Plaintiff's mother testified that he was a good kid whose friends took advantage of him. (R. at 292.) He had been in special classes since fifth grade, but the school put him in general classes in ninth grade. (R. at 294.) He had "flunked" twice in tenth grade and was intellectually at the fourth or fifth grade level, according to school records. (*Id.*) He felt embarrassed that his friends were up to eleventh and twelfth grade while he had failed tenth grade twice already. (R. at 292.) He did not bring any homework home, and it took him a lot of time to complete tasks such as taking out the trash. (R. at 294, 298-99.) He forgot that the trash man did not come everyday. (R. at 298-99.) His mother testified that she got disability payments due to an amputated leg and needed Plaintiff's disability checks for his school uniform, shoes, socks, and underclothes. (R. at 299-300.)

## C. ALJ's Findings

The ALJ issued a written opinion on August 26, 2009. (R. at 17-28.) She found that the most recent favorable medical decision finding Plaintiff disabled was dated March 19, 2001, and was therefore the comparison point decision ("CPD"). (R. at 20.) She also found that his medically determinable impairment at the time of the CPD was mental retardation, which met Listing 112.05, but he had undergone medical improvement as of September 6, 2007. (R. at 21.) The impairments that he had at the time of the CPD had not met or medically equaled listing 112.05, or functionally

equaled the listings since September 6, 2007. (*Id.*) Plaintiff did not have an impairment that had not been considered at the time of the CPD and had not developed any additional impairments subsequent to the CPD. (R. at 28.) He had not had an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments since September 6, 2007. (*Id.*) Based on these findings, the ALJ concluded that Plaintiff's disability had ended as of September 6, 2007, and he had not become disabled since that date. (*Id.*)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

## 2. Determination of Childhood Disability

A disabled child is entitled to monthly benefits under the Social Security Act if certain conditions are met. *See* 42 U.S.C. §§ 1381a (basic entitlement to benefits), 1382 (eligibility for benefits), 1382c(a)(3) (defining disability for purposes of SSI). An individual under the age of eighteen who is not engaging in substantial gainful activity is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(C).

The Commissioner utilizes a sequential three-step inquiry to determine whether a child is disabled and entitled to monthly benefits under the Social Security Act:

1. A child who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. A child who does not have a "severe impairment" will not be found to be disabled.

3. A child whose impairment "meets, medically equals, or functionally equals" a listed impairment in the regulations will be considered disabled.

20 C.F.R. § 416.924(a).

If the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a listed disability. 20 C.F.R. § 416.924(c)-(d). For children, the Listing of Impairments, found in appendix 1 of subpart P of part 404 of Chapter III, "describes impairments that cause marked and severe functional limitations." *Id.* § 416.925(a). Appendix 1 is divided into Parts A and B; Part B exclusively applies to children whereas Part A applies to children only when "the disease processes have a similar effect on adults and children." *Id.* § 416.925(b). To meet the requirements of a listing, the claimant must have a medically

determinable impairment that satisfies all of the criteria of the listing. *Id.* § 416.925(d). An impairment medically equals a listing "when it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a).

If a claimant does not have a severe impairment or combination of impairments that meets or medically equals any listing, the Commissioner determines whether the claimant has an impairment that "results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). To determine whether a child's impairment functionally equals a listed disability, the impairments are evaluated for severity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In evaluating a child's ability to function in each domain, the Commissioner considers (1) the activities the child is able to perform; (2) the activities the child is not able to perform; (3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; (4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; (5) whether the child has difficulty independently initiating, sustaining, or completing activities; and (6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. § 416.926a(b)(2). If the evidence shows that a child's impairment seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is considered "marked." 20 C.F.R. § 416.926a(e)(2)(i). If the evidence shows that a child's impairment very seriously interferes with his or her ability to independently initiate, sustain, or complete activities, the impairment is "extreme." 20 C.F.R. § 416.926a(e)(3)(I). In order to demonstrate functional equivalence, the child must exhibit a "marked" limitation in two of the

domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

### 3. Periodic Review for Disabled Children

A child who has been found disabled must periodically undergo a continuing disability review to determine if he is still eligible for disability benefits. 20 C.F.R. § 416.994a(a). In a benefits termination proceeding, the Commissioner bears the burden of proof. *Griego v. Sullivan,* 940 F.2d 942, 943-44 (5th Cir. 1991). The Commissioner first evaluates whether there has been medical improvement in the impairments the claimant had at the time of the most recent favorable determination, i.e., the comparison point date or CPD. 20 C.F.R. § 416.994a(b)(1); Social Security Ruling ("SSR") 05-03p, 2005 WL 1041037, at *1 (S.S.A. Apr. 27, 2005). If there has been medical improvement, the Commissioner next considers whether the impairments the claimant had at the time of the CPD still meet, or medically or functionally equal the severity of the listing applicable at that time. 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. If they do not, the Commissioner proceeds to consider whether the claimant's current impairments are disabling under the same rules used to make the initial determination of disability. 20 C.F.R. § 416.994a(b)(3); SSR 05-03p. A favorable finding at any of the three steps concludes the review in the claimant's favor.

### 4. Redetermination under the Adult Disability Standard

If an individual who is eligible for disability benefits as a child reaches age eighteen, the Commissioner must redetermine his eligibility by applying the criteria for determining initial eligibility for individuals who are age eighteen or older, instead of any medical improvement standard. *See* 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R § 416.987. The Commissioner utilizes a sequential five-step inquiry to initially determine whether an adult is disabled and entitled to benefits under the Social Security Act:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.** **Issues for Review**

Plaintiff presents two issues for review:

(1) Did the Commissioner properly determine that Plaintiff was no longer disabled because of medical improvement in his condition?

(2) Did the Commissioner use appropriate legal standards in determining that Plaintiff was not disabled?

(Pl. Br. at 1.)

**C.    Issue One: Medical Improvement**

In his first issue for review, Plaintiff argues that substantial evidence does not support the ALJ's decision that he no longer met, medically equaled, or functionally equaled a listed impairment as of September 6, 2007.[2] (Pl. Br. at 8.) He specifically contends that the ALJ should have found that he continued to satisfy the requirements of Listing 112.05D for mental retardation. (*Id.* at 9-11.)

Listing 112.05 states that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning," and that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." 20 C.F.R. Pt. 404, Appendix 1, Subpt. P § 112.05. Section D of Listing 112.05, relevant here, requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* § 112.05D. In order to meet Listing 112.05, a claimant must meet the diagnostic description as well as the requirements set out in the relevant section. *See id.* § 112.00; *Randall v. Astrue*, 570 F.3d 651, 655-60 (5th Cir. 2009) (diagnostic introductory paragraph is a mandatory requirement).

---

[2] Plaintiff later argues that the ALJ's determination is inconsistent with "the preponderance of the evidence." He relies on a final rule from the Commissioner stating that the preponderance of the evidence standard is applied at all levels of administrative review. The final rule also states, however, that the Appeals Council applies the "substantial evidence standard" when it reviews an ALJ's decision and leaves untouched well-established case-law applying the "substantial evidence standard" upon judicial review. *See Clarification for Evidentiary Standard for Determinations and Decisions*, 73 F.R. 76940 (S.S.A. Dec. 18, 2008).

Here, the ALJ provided two reasons for finding that Plaintiff no longer met the requirements of Listing 112.05: his August 2007 IQ scores of 80, 75, and 76 fell outside the range for mental retardation, and he did not have a physical or other mental impairment imposing an additional and significant functional limitation. Plaintiff asserts that the ALJ did not consider the remaining three sets of IQ scores from January 2001, April 2004, and April 2010, even though they fell within the range of mental retardation. The ALJ, however, was not required to consider these sets of scores. The first two sets of IQ scores covered a time period where Plaintiff had already been found disabled, and the most recent set was reported months after the ALJ had rendered his decision and months after Plaintiff had turned eighteen and was no longer subject to the requirements of § 112.05D. *See* 20 C.F.R. Pt. 404, Appendix 1, Subpt. P § 112.00A.

Plaintiff also argues that the ALJ should have evaluated his ADHD as another impairment imposing an additional and significant functional limitation under § 112.05D. He asserts that the ALJ failed to evaluate whether he continued to have ADHD, was treated for it, or was on medication to manage and control it, and that she failed to develop the record despite a complete absence of evidence on these issues. To the contrary, the record before the ALJ did contain evidence on these issues. The same DISD records that noted Plaintiff's diagnosis of ADHD also indicated that he was not on any medication for it. (R. at 249.) A July 2007 daily activities questionnaire filled out by Plaintiff stated that he did not have any mental or emotional problems, and had not sought any treatment for such problems. (R. at 152.) Dr. Somodevilla's notes from July 2007 also indicated that he was not on any medications, that his attention span was normal, and that he focused without drifting. (R. at 237.) Finally, Plaintiff himself testified at the March 2009 hearing that he was not on any medication at all. (R. at 290.) Given these circumstances, the ALJ was not required to

evaluate ADHD as an impairment imposing significant functional limitations or develop the records with respect to it.

Nor was the ALJ required to find that Plaintiff suffered from another impairment imposing an additional and significant functional limitation, adaptive or otherwise. The record was devoid of any evidence indicating evaluation or treatment of a physical or mental impairment. Additionally, the evidence of record showed that Plaintiff was no longer in special education classes, enjoyed playing basketball and football, took care of his personal and grooming needs without reminders, kept up with his homework, helped his mother around the house, took out the trash, was able to prepare meals for himself, and got along well with friends and at home. (R. at 288-89, 291.) Dr. Somodevilla noted that Plaintiff enjoyed playing sports and spending time with his friends, could manage his personal needs, was helpful around the house, and was not a management problem. (R. at 236-38.) Dr. Somodevilla also noted that Plaintiff had fair judgment and insight and did not have a significantly impaired memory or a history of delusions or hallucinations. (R. at 238.) While there is some evidence in the record that could arguably support Plaintiff's claim, there is no requirement that all of the evidence support the ALJ's decision. *See also Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (conflicts in the evidence are for the ALJ, not the courts, to resolve). If substantial evidence supports the ALJ's decision, it must be affirmed.

Here, because the record taken as a whole provides ample evidence establishing that as of September 6, 2007, Plaintiff failed to satisfy at least two of the requirements for meeting Listing 112.05, the ALJ's finding that Plaintiff experienced medical improvement and no longer met Listing 112.05 is supported by substantial evidence.

**D.    Issue Two: Proper Legal Standards**

Plaintiff next argues that the Commissioner failed to apply the proper legal standards to evaluate his disability. (Pl. Br. at 11-12.) Relying on 20 C.F.R. §§ 404.1563 and 416.963, he asserts that because he was within eight weeks of his eighteenth birthday on the date of the ALJ's decision and was over eighteen years of age at the time of the Appeals council's denial of his request, the Appeals Council should have remanded his case to the ALJ for reconsideration under the adult standards for evaluating disability. (*Id.*)

The regulations upon which Plaintiff relies relate to the fifth step of the sequential evaluation of adult disability and do not concern redeterminations of a disabled child's eligibility under the adult standards. *See* 20 C.F.R. §§ 404. 1563 & 416.963. The applicable legal provisions provide that if a child is eligible for disability benefits for the month preceding the month in which he attains age eighteen, the Commissioner must redetermine his eligibility by applying the criteria for determining initial eligibility for individuals who are age eighteen or older, either during the one-year period beginning on the individual's eighteenth birthday, or in lieu of a continuing disability review, whenever he determines that the individual's case is subject to redetermination. 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R § 416.987.

Here, Plaintiff attained age eighteen on October 17, 2009, two months after the ALJ found that his disability had ended as of September 6, 2007. Even though Plaintiff was eighteen years old at the time of ALJ's denial of his request for review, he was not eligible for disability benefits for the month preceding the month he attained age eighteen, as determined by the ALJ. Accordingly, the Appeals Council was not required to remand the case to the ALJ for reconsideration under the adult standards for determining disability.

## III. RECOMMENDATION

Plaintiff's motion for summary judgment should be **DENIED**, Defendant's motion for summary judgment should be **GRANTED**, and the decision of the Commissioner should be wholly **AFFIRMED**.

**SO RECOMMENDED**, on this 26th day of May, 2011.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE